Filed Dec. 21, 1883.

———————

No. 11,049.

STUMPH ET AL. *v.* REGER.

, SHERIFF'S SALE.—*Appraisement.—Quieting Title.*—An execution requiring appraisement was levied on lands of the debtor. The lands were appraised at $1,100 with this proviso: "But if there are any liens they are to be deducted from the above value." No schedule of liens had been furnished to the appraisers, and they deducted none. There were in fact liens to the amount of $2,500, and upon a bid of $1 by the judgment plaintiff he obtained a sheriff's deed.

*Held,* that the sale was void, and one acquiring title from the execution debtor after the sale, possession not having changed, could maintain a suit to quiet title upon a complaint generally asserting title in himself, and that the defendant claims some interest in the lands adverse to him.

From the Superior Court of Marion County.

*D. V. Burns* and *C. S. Denny,* for appellants.

*I. Klingensmith,* for appellee.

HAMMOND, J.—This was an action by the appellee against the appellants to quiet title to certain real estate in the city of Indianapolis.

The appellee's complaint was in three paragraphs. The object of the first and second paragraphs was to set aside a sheriff's sale and conveyance to the appellants, on the ground that John Stumph, against whom the judgment was rendered under which the sale was had, held the property only as trustee for the appellee's husband. The third paragraph of the complaint alleged that the appellee was the owner of the real estate, and that the appellants claimed some title thereto adverse to the appellee, the nature of which was unknown to her.

Issues were made and the case tried by the court. At the request of the parties, the court found the facts specially, stating its conclusions of law thereon.

So far as material to a proper understanding of the case, the facts specially found were as follows:

John Stumph was the owner in fee simple of the real estate in controversy from August 15th, 1872, to February 9th, 1878. On the date last named, he and his wife conveyed the property to the appellee. The appellants recovered a judgment in the superior court of Marion county, against said John Stumph, on November 15th, 1876, for $839.90 and their costs, subject to valuation and appraisement laws. An execution issued on said judgment, June 23d, 1877, and was levied upon the real estate in dispute. On a proper appraisement, the property was valued at $1,200. The execution was returned without sale. A *venditioni exponas* then issued; a re-appraisement was had, fixing the value of the real estate

at $1,100.   After legal notice, it was sold at sheriff's sale, November 10th, 1877, to the appellants for $1.   There being no redemption, a sheriff's deed was executed to the appellants after the expiration of a year from the sale.   At the time of the sale there were judgment and tax liens against the property, exclusive of the judgment under which it was sold, to the amount of $2,500.   Prior to the last appraisement, the appellants called the sheriff's attention to these liens; but the sheriff wholly failed to furnish the appraisers with a schedule of the same, nor was such schedule furnished to them by any other person.   In their appraisement, the appraisers did not deduct from the value set down by them, the liens, nor make oath to the effect that the value fixed and set down by them was the fair cash value, exclusive of liens and encumbrances, but annexed to the appraisement the following statement: "This appraisement is made upon the supposition that the title to said lot is clear of encumbrances, but if there are any liens, they are to be deducted from the above value."

The court, in its conclusions of law, found the sale invalid.   The finding was based upon the theory that the real estate, under the appraisement as made, could not legally be sold for less than two-thirds of its appraised value, without reference to liens and encumbrances.   The question as to the correctness of the conclusions of law upon the facts found is properly presented by the record.

Counsel for the appellants urge, in the first place, that the findings of facts and conclusions of law are outside of the case made by any paragraph of the appellee's complaint; and that their exceptions to the conclusions of law, for that reason, should have been sustained.   We are of the opinion, however, that the findings, both of fact and law, were authorized by the third paragraph of the complaint.   In an action to quiet title, it is sufficient for the plaintiff to aver that he is the owner of the land, and that the defendant claims title adversely to him.   It is not necessary for the plaintiff to

aver or prove the claim of title of the defendant. That is a matter of defence. *Dumont* v. *Dufore,* 27 Ind. 263; *Gillett* v. *Carshaw,* 50 Ind. 381; *Marot* v. *Germania Building, etc., Ass'n,* 54 Ind. 37; *Green* v. *Glynn,* 71 Ind. 336. In the last case it was said: " The very object of the action to quiet title is to determine all conflicting claims, and to remove all clouds from the title of the complainant. If one having a claim is brought into court by a complaint to quiet title, and fails to assert his claim, he is concluded by the judgment, even though he omitted to assert his real claim. The statute was intended to secure repose and to settle in one comprehensive action all conflicting claims." No doubt, in such a case, where the evidence shows that the defendant has any valid claim or lien against the land, his rights may be fully protected by a special finding of facts, so that the decree will not preclude the subsequent assertion of his claim or lien.

The appellants claim, in the second place, that the conclusion of law, that the sheriff's sale was invalid, was erroneous. The contention upon this point requires us to decide whether the sheriff in making the sale had the right to consider the liens and encumbrances, or whether he was required, without making any deduction on account thereof, to sell for not less than two-thirds of the appraised value.

The judgment under which the sale was made required an appraisement of the property. Section 381, Code 1852 (section 576, R. S. 1881). And it could not be sold for less than two-thirds of the appraised cash value, exclusive of liens and encumbrances. Section 445, Code 1852 (section 732, R. S. 1881).

" It shall not be the duty of the sheriff or appraisers to ascertain the amount of liens and encumbrances; but either party may furnish the sheriff with a list thereof, with the amount and nature of each." Section 449, Code 1852 (section 736, R. S. 1881).

" The sheriff shall furnish the appraisers a schedule of the property levied on, with the encumbrances made known to

him, and they shall proceed to fix and set down opposite to each tract, lot, or parcel of real estate, * * * the cash value, deducting liens and encumbrances; which schedule they shall return to the sheriff." Section 450, Code 1852 (section 737, R. S. 1881).

" The appraisers shall take and subscribe an oath annexed to such appraisement, to the effect that the property mentioned in the schedule is, to the best of their judgment, worth the sums specified therein; that the same is the fair cash value thereof at the time, exclusive of liens and encumbrances; which oath the sheriff is authorized to administer and attest, when taken and subscribed by the appraisers." Section 451, Code 1852 (section 738, R. S. 1881).

The special finding of facts shows that the provisions of the above sections of the statute relating to the ascertainment of, and the appraisement subject to, encumbrances, were not complied with. We think that the court below was correct in saying " that one of the objects of sections 450 and 451 of the act concerning the civil procedure of courts, approved June 18th, 1852, was that the bidders at sheriffs' sales of real estate might know the nature and amount of the liens and encumbrances upon such real estate so as to know how to bid intelligently."

As the appellants' purchase at sheriff's sale was under their own judgment, they were chargeable with notice of all irregularities.

It is finally insisted by counsel for the appellants that the appellee can not contest the validity of the sheriff's sale, for the reason that her title was derived after such sale from the execution debtor. This position is sustained by Rorer on Judicial Sales (2d ed.), section 1084, and the text of the author is partially but not fully supported by *Shaw* v. *Lindsay,* 46 Ala. 290, and *Miller* v. *Carnall,* 22 Ark. 274. But where, as in the case at bar, there was no adverse possession by the purchaser at sheriff's sale at the time of the subsequent conveyance by the execution debtor, we can see no good reason, nor

is any suggested, why the last grantee may not maintain a suit to avoid the sheriff's sale. The right of such grantee to bring an action for that purpose is expressly recognized by section 293, R. S. 1881, which provides that actions " For the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by title acquired after the date of the judgment," must be commenced " within ten years after the sale."

We think the court below did not err in its conclusions of law.

Judgment affirmed, with costs.

Filed Dec. 19, 1883.    Petition for a rehearing overruled Jan. 4, 1884.