**Lloyd L. KROTZ and Constance R. Krotz, Appellees,**

v.

**Alvin J. SATTLER, James A. Sattler a/k/a Jim Sattler, Michael J. Sattler, Sattler Homes, Inc.; Sattler Homes Realty, L.C., Jim Sattler Construction Co., Inc., and Northland Development, L.C., Appellants,**

**Hall & Hall Engineers, Inc., Mid–State Construction Co., City of Cedar Rapids, Iowa, and Linn County, Iowa, Defendants.**

No. 96–1851.

Supreme Court of Iowa.

Nov. 25, 1998.

Eugene J. Kopecky of Ackley, Kopecky & Kingery, Cedar Rapids, for appellants.

Thomas R. Pence of Irvine & Robbins, Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This quiet title action stems from a decade-old delay in closing on a real estate deal. The vendors/plaintiffs prevailed at trial, convincing the district court that the vendees' failure to tender the remaining purchase money or demand a deed required quieting of title in the sellers. The vendees appealed and, upon transfer to the court of appeals, secured a reversal on the ground plaintiffs had disregarded recognized remedies for inaction on an executory contract.

We granted the vendors' application for further review. Having examined the record de novo, we concur in the court of appeals'

factual and legal conclusions. We reverse the district court.

## I. Background Facts and Proceedings.

The chronology of relevant events is essentially uncontroverted. In April 1985, plaintiffs Lloyd and Constance Krotz offered for sale—and defendants Sattlers agreed to buy—three adjoining parcels of real estate situated in Linn County, Iowa. A surveyor estimated the size of the total package at roughly 22.9 acres; no actual survey was performed. The parties agreed on a sale price of $8000 per acre.

Little progress toward closing on the agreement took place in the next eighteen months. Impending changes in the income tax law, however, prompted Lloyd Krotz to push for closing prior to January 1, 1987.[1] Title problems surrounding the smallest parcel, an abandoned railroad right-of-way, made swift closing on that piece impossible. But conveyance by warranty deed of the two other parcels for the sum of $180,000 (22.5 acres at $8000 per acre) took place on December 30, 1986.

Thereafter counsel for Krotz worked to straighten out the title on the railroad property which is the subject of this appeal. The following legal description was devised:

> The SE-ly ½ of the former Chicago and Rock Island and Pacific Railroad Right-of-Way lying within the NE¼ SE¼ of Section 1–83–8, Linn County, Iowa

### AND

> All that part of the former Chicago and Rock Island and Pacific Railroad Right-of-Way lying within the SE¼ SE¼ Section 1–83–8, Linn County, Iowa, which lies East of the West line extended North of Lot 1, Auditor's Plat, No. 456, Linn County, Iowa.

An abstract was prepared and forwarded to Sattlers' counsel for examination. He issued a title opinion identifying several objections to the title. Krotz's counsel, Irene Malenda, addressed these concerns by phone and in writing. She urged that the matter be con-cluded as quickly as possible. The record reveals that Malenda received no response from her final letter to Sattlers' counsel dated November 30, 1987.

Five years later Krotz learned that Sattlers were installing a sanitary sewer line across the railroad property to connect with an adjoining real estate development. Krotz eventually brought this suit to quiet title. Sattlers answered by claiming title pursuant to the December 30, 1986, warranty deed.

The district court found that the parties' offer to purchase contemplated the conveyance of three separately described parcels of real estate, but the closing held in December 1986 covered only two of them. The court specifically rejected Sattlers' dual theories that (1) they paid for all three parcels but only received the deed for two, and (2) the deed actually received covered the now-disputed railroad reversion. Those theories were belied, the court found, by the testimony of Krotz's former counsel, the closing documents, tax records, and Sattlers' own title opinion on the railroad property. There having been no mutual intent to convey the railroad property in 1986, and given the years that had passed since the parties executed their agreement, the court concluded that Lloyd and Constance Krotz were entitled, in equity, to retain the property free and clear of any claim by Sattlers. This appeal by Sattlers followed.

## II. Scope of Review.

Actions to quiet title are triable in equity and reviewed on appeal de novo. *Larman v. State*, 552 N.W.2d 158, 161 (Iowa 1996); see Iowa Code § 649.6 (1997) (except for recovery of attorney fees, action to quiet title shall be conducted as equitable proceeding). Although we are not bound by the trial court's factual findings or its legal conclusions, see *Rouse v. Union Township*, 530 N.W.2d 714, 716 (Iowa 1995), we do give weight to the trial court's findings with respect to the credibility of witnesses. Iowa R.App. P. 14(f)(7).

---

1. Except where otherwise indicated, we will refer to the plaintiffs throughout this opinion by the singular "Krotz."

## III. Analysis.

■ The record plainly supports the finding made by the trial court and court of appeals that the parties intended the December 30, 1986, closing to cover only the two parcels of real estate conveyed by deed on that date. The deed from Krotz to Sattlers simply does not include a legal description for the railroad property. In reaching this conclusion, the trial court's opinion highlighted the credibility of Krotz's former counsel, Irene Malenda, who participated personally in the closing and prepared the closing documents. She testified that none of the parties questioned the purchase price, acreage, or legal descriptions of the transferred properties. Moreover, she personally performed the additional legal work necessary to insure merchantable title in the railroad parcel, satisfying Sattlers' title objections.

Whether the Sattlers *paid* for all three parcels, as they now claim, is less clear. The answer is complicated by the fact that the dimensions of the property sold were estimated, not surveyed. But resolution of that controversy, which might be important to a suit for breach of contract, has little bearing on resolution of this quiet title action.

■ An action to quiet title "presupposes complete title in the plaintiff as against the defendant." *Cody v. Wiltse*, 130 Iowa 139, 144, 106 N.W. 510, 511 (1906). The action cannot be sustained if the defendant proves some "real interest"—as distinguished from some "mere apparent or asserted right"—in the property. *Id.* Sattlers have clearly furnished that essential proof here.

■ When Krotz agreed in 1985 to sell the railroad property to Sattlers, the *equitable* title passed to Sattlers. *Cumming v. First Nat'l Bank*, 199 Iowa 667, 668, 202 N.W. 556, 556 (1925). Krotz retains *legal* title pending payment of the purchase price, maintaining an interest in the property "as security for his debt, and as trustee for the purchaser." *Id.* We recently reviewed this doctrine of equitable conversion, applicable to executory real estate contracts, in *Pierce v. Farm Bureau Mutual Insurance Co.*, 548 N.W.2d 551 (Iowa 1996). Quoting a treatise on real property law, we summarized the doctrine this way:

> [W]hen the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, [and] the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.

> By the doctrine of equitable conversion under an executory contract of sale, the equitable estate, in its entirety, passes immediately to the purchaser at the moment the contract becomes effective and the bare legal title for security purposes remains in the vendor. The purchaser of the land is looked on and treated as the owner thereof, and the vendor, though holding the legal title, holds it as a trustee for the purchaser, and the vendee holds the purchase money in trust for the vendor.

*Pierce*, 548 N.W.2d at 555 (quoting 8A George W. Thompson, *Thompson on Real Property* § 4447, at 273–75 (Grimes ed.1963)).

■ Given Sattlers' bona fide interest in the railroad property, we cannot accept the district court's conclusion that mere passage of time without closing sufficed to defeat Sattlers' title. It is well settled that upon a vendee's breach of an executory land contract, a vendor has three alternative remedies: rescission, compliance with the contract followed by an action for specific performance, or retention of the land coupled with a damage action for loss of the bargain. *Gordon v. Pfab*, 246 N.W.2d 283, 287 (Iowa 1976); *Prichard v. Mulhall*, 127 Iowa 545, 548, 103 N.W. 774, 775 (1905); *accord Pierce*, 548 N.W.2d at 556. As rightly noted by the court of appeals, Krotz pursued none of these remedies.

■ In an effort to uphold the trial court's ruling, Krotz contends that Iowa Code section 614.1(5) "now bars both Krotzs and Sattlers from trying to enforce the April 29, 1985, contract." The argument is fundamentally flawed. The time for bringing an action to

enforce a contract runs from the date of breach, not from the date the agreement was executed. *See Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993) (no cause of action accrues until wrongful act produces loss or damage to the claimant); *Deming v. Haney*, 23 Iowa 77, 80 (1867) (statute runs, not from time of promise but from demand for payment); 17A Am.Jur.2d *Contracts* § 747, at 762 (1991). The parties' original contract failed to identify a time for performance or expiration of the agreement. The record reveals that neither party has forced the issue. Krotz has never tendered a deed for the remaining parcel; Sattlers have never tendered payment in exchange for a deed.

In short, the court erred when it quieted title in Krotz because Sattlers lawfully maintain a cognizable interest in the property. The court of appeals properly recognized this error and dismissed Krotz's quiet title action. We concur in the court of appeals' reasoning and decision and, accordingly, reverse the judgment of the district court.

**COURT OF APPEALS DECISION AFFIRMED; DISTRICT COURT JUDGMENT REVERSED.**